Corynne McSherry (CA SBN 221504)
corynne@eff.org
ELECTRONIC FRONTIER
FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Amicus Curiae
ELECTRONIC FRONTIER
FOUNDATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| On The Cheap, LLC d/b/a Tru Filth, LLC, a California Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>Does 1-5,011,<br><br>    Defendants. | CASE NO. 10-cv-4472 BZ<br><br>**BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION REGARDING ORDER TO SHOW CAUSE**<br><br>Honorable Bernard Zimmerman<br>Courtroom C – 15th Floor |

## <u>TABLE OF CONTENTS</u>

INTEREST OF AMICUS ............................................................................................................. 1

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.      PLAINTIFF HAS NOT SHOWN THAT MASS JOINDER IS PROPER ....................... 2

     A.      Federal Courts—Including the Northern District of California—Have Rejected
         Attempts at Mass Joinder Such As Plaintiff Attempts Here. .............................. 3

     B.      Plaintiff Has Not Established a Concert of Action Among Defendants ........................ 4

     C.      Plaintiff Has Not Shown a Question of Law or Fact in Common to All Defendants. ...... 6

     D.      Mass Joinder Will Unfairly Prejudice Defendants. ........................................... 7

II.     THE CASES SHOULD ALSO BE DISMISSED FOR LACK OF JURISDICTION AND
     IMPROPER VENUE ....................................................................................................... 8

     A.      Plaintiff Has Not Made a *Prima Facie* Showing that the Court Has General
         Jurisdiction Over the Defendants. ............................................................... 8

     B.      Plaintiff Has Not Made a *Prima Facie* Showing that the Court Has Specific
         Jurisdiction Over the Defendants. ............................................................... 9

     C.      Plaintiff Has Not Made a *Prima Facie* Showing that Venue Properly Exists in this
         Court. ................................................................................................. 12

III.    THE RIGHT TO ENGAGE IN ANONYMOUS SPEECH IS PROTECTED BY THE FIRST
     AMENDMENT ............................................................................................................. 14

CONCLUSION ........................................................................................................................ 16

# TABLE OF AUTHORITIES

## Federal Cases

*ALS Scan, Inc. v. Digital Service Consultants*,
    293 F.3d 707 (4th Cir. 2002) ................................................................. 10, 11

*Applied Underwriters, Inc. v. Combined Mgmt.*,
    371 Fed. Appx. 834 (9th Cir. 2010) .............................................................. 9

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
    223 F.3d 1082 (9th Cir. 2000) .................................................................... 10

*BMG Music v. Does 1-203*,
    No. 04-0650, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004).................................. 4

*BMG Music v. Does 1-4*,
    No. 06-1579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. July 31, 2006) ........... 4, 7

*Buckley v. Am. Constitutional Law Found.*,
    525 U.S. 182 (1999) ................................................................................. 15

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................. 10

*Calder v. Jones*,
    465 U.S. 783 (1984) ................................................................................. 11

*Call of the Wild Movie, LLC v. Does 1-1,062*,
    No. 10-cv-0445 (D.D.C. Mar. 22, 2011) ...................................................... 13

*Chirila v. Conforte*,
    47 Fed. Appx. 838 (9th Cir. 2002) .............................................................. 10

*Coleman v. Quaker Oats*,
    232 F.3d 1271 (9th Cir. 2000) ..................................................................... 7

*Columbia Pictures Television v. Krypton Broad.*,
    106 F.3d 284, 288 (9th Cir. 1997) ........................................................... 8, 13

*Coughlin v. Rogers*,
    130 F.3d 1348 (9th Cir. 1997) ................................................................. 4, 6

*Dendrite Int'l, Inc. v. Doe No. 3*,
    775 A.2d 756 (N.J. App. 2001) .................................................................. 15

*Diabolic Video Prods.,Inc. v. Does 1-2099,*
   10-cv-05865-PSG 9 (N.D. Cal. May 31, 2011) ........................................................ 4

*Doe v. 2themart.com, Inc.,*
   140 F. Supp. 2d 1088 (W.D. Wash. 2001) ............................................................ 14

*Dole Food Co., Inc. v. Watts,*
   303 F.3d 1104 (9th Cir. 2002) .............................................................................. 13

*Feltner v. Columbia Pictures Television,*
   523 U.S. 340, 118 S.Ct. 1279 L.Ed.2d 438 (1998) ................................................. 8

*Fielding v. Hubert Burda Media,*
   415 F.3d 419 (5th Cir. 2005) ............................................................................... 11

*Goldberg v. Cameron,*
   482 F. Supp. 2d 1136 (N.D. Cal. 2007) .............................................................. 8, 9

*Grandbouche v. Clancy,*
   825 F.2d 1463 (10th Cir. 1987) ............................................................................ 15

*In re Verizon Internet Servs. Inc.,*
   257 F. Supp. 2d 244 (D.D.C. 2003) ...................................................................... 14

*Interscope Records v. Does 1-14,*
   558 F. Supp. 2d 1176 (D. Kan. 2008) ................................................................... 14

*IO Group Inc. v. Does 1 -435,*
   No. 10-4382 U.S. Dist. LEXIS 14123 (N.D. Cal. Feb. 3, 2011) ............................... 3

*LaFace Records, LLC v. Does 1-38,*
   No. 07-0298, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008) ..................................... 4, 5

*LFP Internet Group LLC v. Does 1-3,120,*
   No. 10-2095 (N.D. Tex. Feb. 10, 2011) .............................................................. 3, 5, 7

*McIntyre v. Ohio Elections Comm'n,*
   514 U.S. 334 (1995) .............................................................................................. 14

*Mosley v. General Motors Corp.,*
   497 F.2d 1330 (8th Cir. 1974). ............................................................................... 4

*Motown Records v. Does 1-252,*
   No. 04-0439 (N.D. Ga. Aug. 16, 2004) ................................................................... 4

*New York Times v. Sullivan,*
   376 U.S. 254 (1964) .............................................................................................. 15

*Nu Image, Inc. v. Does 1-23,322*,
  No. 1:11-cv-00301 (D.D.C. July 29, 2011) ............................................................ 7, 13, 14

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
  52 F.3d 267 (9th Cir. 1995) ............................................................................................ 10

*Pacific Century Int'l, Ltd. v. Does 1-101*,
  No. 11-2533 (N.D. Cal. July 8, 2011) ........................................................................ 3, 5, 6

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ........................................................................................ 12

*Reno v. ACLU*,
  521 U.S. 844 (1997) ........................................................................................................ 14

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) ..................................................................................... 11, 12

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................................................ 8

*Shelley v. Kraemer*,
  334 U.S. 1 (1948) ............................................................................................................ 15

*Silkwood v. Kerr-McGee Corp.*,
  563 F.2d 433 (10th Cir. 1977) ........................................................................................ 15

*Sony Music Entm't, Inc. v. Does 1-40*,
  326 F. Supp. 2d 556 (S.D.N.Y. 2004) ......................................................................... 4, 14

*Stauffacher v. Bennett*,
  969 F.2d 455 (7th Cir. 1992) .......................................................................................... 10

*Twentieth Century Fox Film Corp. v. Does 1-12*,
  No. 04-4862 (N.D. Cal. Nov. 16, 2004) ........................................................................... 4

*UMG Recordings, Inc. v. Does 1-4*,
  No. 06-0652, 2006 WL 1343597 (N.D. Cal. Mar. 6, 2006) ............................................ 14

*UMG Recordings, Inc. v. Does 1-51*,
  No. 04-0704 (W.D. Tex. Nov. 17, 2004) ........................................................................ 4, 7

*Virgin Records Am. v. Does 1-44*,
  No. 04-0438 (N.D. Ga. Mar. 3, 2004) ............................................................................... 4

iv

*Voltage Pictures LLC v. Does 1-5,000,*
   No. 10-0873-BAH (D.D.C. May 12, 2011) ................................................................. 4, 13

*VPR Internationale v. Does 1-1017,*
   No. 11-2068 (C.D. Ill. Apr. 29, 2011). ......................................................................... 6

*Washington v. Sandoval,*
   No. 10-0250, 2011 U.S. Dist. LEXIS 43377 (N.D. Cal. Apr. 19, 2011) ......................... 6

*West Coast Productions v. Does 1-2010,*
   No. 10-0093 (N.D.W. Va. Dec. 16, 2010) .................................................................. 3, 5

*World-Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286 (1980) ..................................................................................................... 8

*Young v. Actions Semiconductor Co., Ltd.,*
   386 Fed. Appx. 623 (9th Cir. 2010) ............................................................................ 12

**State Statute**

Cal. Civ. Proc. Code § 410.10 ............................................................................................ 9

**Federal Statutes**

28 U.S.C. § 1391(b) ............................................................................................................ 13

28 U.S.C. § 1400(a) ....................................................................................................... 8, 13

**Federal Rules**

Fed. R. Civ. P. 20 ........................................................................................................ *passim*

Fed. R. Civ. P. 21 ................................................................................................................ 8

**Other Authorities**

Ankur Patel, Comment, *BitTorrent Beware: Legitimizing BitTorrent Against Secondary Copyright
   Liability*, 10 Appalachian J.L. 117, 119 (2011) .......................................................... 6

Lin Ye *et al.*, *A Measurement Study on BitTorrent System*, 3 Int'l J. Comm, Network & Sys. Sci 916,
   (2000) ........................................................................................................................... 5

v

BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION
CASE NO. 10-cv-4472 BZ

## INTEREST OF AMICUS

The Electronic Frontier Foundation ("EFF") is a membership-supported, nonprofit public interest organization dedicated to protecting digital civil liberties and promoting online innovation and creativity.  For more than twenty years, EFF has represented the interests of technology users in both court cases and in broader policy debates surrounding the application of law in the digital age.  As such, EFF offers a perspective that is distinct from that of the parties to this case.

## INTRODUCTION

The Electronic Frontier Foundation files this amicus brief to urge the Court to dismiss this case, identifying why the vast majority of Defendants should be severed or dismissed due to misjoinder and the Court's lack of jurisdiction.

At the outset, it is critical to understand the context from which this Order to Show Cause arose and the underlying lawsuit was filed.  This case is one of a growing number of other mass copyright cases filed across the country—affecting more than 200,000 people[1] to date—that raise serious problems of fairness, due process, and individual justice.  In these cases, plaintiffs have sued hundreds, thousands, or even tens of thousands of unnamed defendants from all over the country, usually alleging a single act of copyright infringement by each defendant.

The suits do not appear to be filed with the intention of litigating them.  Instead, it seems that the plaintiffs' lawyers hope to use the threat of statutory damages and attorneys' fees, as well as the ignorance of those sued about their potential defenses, to induce the defendants into settling for a payment of roughly $1,500 to $2,500.  This amount is less than a defendant would likely have to spend just to hire a lawyer to defend the case.  And strong defenses exist for many sued.  For example, it is typical in such cases (as here) that a plaintiff's dragnet approach sweeps in significant numbers of defendants over which the court ruling on discovery has no personal jurisdiction.   In addition, plaintiffs would be hard-pressed to prove actual damages caused by any particular defendant, and statutory damages may not be available because they have not complied with the statutory

---

[1] *See* Ernesto, *200,000 BitTorrent Users Sued in the United States*, TorrentFreak (Aug.8, 2011), http://torrentfreak.com/200000-bittorrent-users-sued-in-the-united-states-110808.

1

requirements.  In sum, plaintiffs who have filed such cases over the past year appear motivated by the desire to use the federal courts as private investigators, to obtain the identities of potential targets and then to pressure such defendants into a quick settlement.

While a rightful copyright owner may certainly seek legal redress for alleged infringement, this Plaintiff has failed to comply with fundamental due process.  First, Plaintiff has improperly joined more than 5,000 unrelated Defendants into this single action, jeopardizing their rights to individual evaluations of their actions and defenses.   Second, Plaintiff's own factual allegations show that majority of the Defendants are located outside of California; venue and personal jurisdiction, therefore, are improper.   These important doctrines—joinder and jurisdiction—are not "judicial obstacles put in the way of copyright enforcement," as Plaintiff complains, but the essential due process building blocks of our judicial system.   Plaintiff's Response to Order to Show Cause ("ROSC") at 5.

Given these fundamental flaws, it is clear that Plaintiff's case against the vast majority of the Defendants here cannot stand.  Amicus therefore urges the Court to dismiss this mass case and instruct Plaintiff to:

1) Re-file this action against the individual Defendants, in appropriate courts that appear likely to be able to properly exercise personal jurisdiction over the individual Defendants;

2) Meet the heightened First Amendment discovery standard prior to making any futher attempts to unmask the any Defendants who remain anonymous;

3) Notify each individual Defendant with whom Plaintiff has already communicated that he or she has been severed from this action.

## ARGUMENT

## I.     PLAINTIFF HAS NOT SHOWN THAT MASS JOINDER IS PROPER

Rule 20 of the Federal Rules of Civil Procedure ("Rule 20") allows for joinder of defendants when two conditions are met.  First, a plaintiff must demonstrate that its "right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(2).  Second,

"any question of law or fact *common to all defendants* [must] arise in the action." *Id*. (emphasis added). Even if these requirements are satisfied, a "court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice . . . ." Fed. R. Civ. P. 20(b).

Here, Plaintiff has not shown that joinder of 5,011 Doe Defendants is appropriate or otherwise complies with the Federal Rules of Civil Procedure. *See IO Group Inc. v. Does 1 -435*, No. 10-4382, 2011 U.S. Dist. LEXIS 14123, at *19 (N.D. Cal. Feb. 3, 2011) ("filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for").

## A.   Federal Courts—Including the Northern District of California—Have Rejected Attempts at Mass Joinder Such As Plaintiff Attempts Here.

Plaintiff is not the first to improperly sue numerous unrelated defendants in a single copyright infringement lawsuit based on the coincidence that they allegedly infringed works owned by the same copyright holder. Federal courts, including this District, have long recognized that these mass copyright suits may deny individual justice to those caught up in a plaintiff's indiscriminate dragnet. Order Severing Doe Defs. and Dismissing Claims 4, *Pacific Century Int'l, Ltd. v. Does 1-101*, No. 11-2533 (N.D. Cal. July 8, 2011) ("Attempts to join numerous defendants in a single action for copyright infringement over P2P networks historically have failed."). Several courts have severed these cases, effectively dismissing tens of thousands of Doe defendants nationwide. *See, e.g.*, *id*.; *IO Group, Inc. v. Does 1-435*, U.S. Dist. LEXIS 14123, at *2 (Amicus's Request for Judicial Notice ("RJN"), Ex. G) ("[T]he allegations that defendants simply used the same peer-to-peer network to download plaintiff's work . . . is insufficient to allow plaintiff to litigate against hundreds of different Doe defendants in one action."); *LFP Internet Group LLC v. Does 1-3,120*, No. 10-2095 (N.D. Tex. Feb. 10, 2011) (RJN, Ex. F) (quashing subpoenas, holding that Plaintiff did not show that the Defendants were "in any way related to each other, or that they acted in concert or as a group in their allegedly offending actions"); *West Coast Prods. v. Does 1-2010*, No. 10-0093 (N.D.W.Va. Dec. 16, 2010) (RJN, Ex. A).

BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION
CASE NO. 10-cv-4472 BZ

Contrary to Plaintiff's assertions,[2] these orders, disapproving of joining large numbers of defendants in a single action under Rule 20, follow a pattern starting as early as 2004. *See, e.g.*, *BMG Music v. Does 1-203*, No. 04-0650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); *LaFace Records, LLC v. Does 1-38*, No. 07-0298, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008) (severing a lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same networks); *BMG Music v. Does 1-4*, No. 06-1579, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (severing, *sua sponte*, multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement); *UMG Recordings, Inc. v. Does 1-51*, No. 04-0704 (W.D. Tex. Nov. 17, 2004) (RJN, Ex. B) (dismissing without prejudice all but the first of 254 defendants accused of unauthorized music file-sharing); *Twentieth Century Fox Film Corp. v. Does 1-12*, No. 04-4862 (N.D. Cal. Nov. 16, 2004) (RJN, Ex. C) (permitting discovery to identify first of twelve Doe defendants but staying case against remaining Does until plaintiff could demonstrate proper joinder).[3]

**B.**    **Plaintiff Has Not Established a Concert of Action Among Defendants.**

Persons "may be joined in one action as defendants if any right to relief is asserted . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2).   "The first prong, the 'same transaction' requirement, refers to similarity in the factual background of a claim." *Coughlin v. Rogers,* 130 F.3d 1348, 1350 (9th Cir.1997).    The "same transaction" requirement is generally evaluated on a case-by-case basis. *See Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).  "No hard and fast rules have been established

---

[2] Plaintiff spends nearly ten pages attempting to explain why Magistrate Judge Grewal's recent order in *Diabolic Video* is a departure from settled law.  ROSC at 7-16, *citing Diabolic Video Prods.,Inc. v. Does 1-2099,* 10-cv-05865-PSG 9 (N.D. Cal. May 31, 2011).  To the contrary, *Diabolic Video* joins a long line of cases in federal district courts nationwide that have severed tens of thousands of defendants accused of copyright infringement over BitTorrent.

[3] Amicus recognizes that such judicial analysis has not been universal.  *See, e.g.*, *Motown Records v. Does 1-252*, No. 04-0439 (N.D. Ga. Aug. 16, 2004) (denying motion to quash); *Virgin Records Am. v. Does 1-44*, No. 04-0438 (N.D. Ga. Mar. 3, 2004) (granting leave to take expedited discovery); *Voltage Pictures LLC v. Does 1-5,000,* No. 10-0873-BAH (D.D.C. May 12, 2011); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) (applying First Amendment balancing test but denying as premature motion to quash based on misjoinder and lack of personal jurisdiction).

under [Rule 20]." *Id*. "However, merely committing the same type of violation in the same way does not link defendants together for the purposes of joinder." *LaFace Records*, 2008 WL 544992, at *2.

Plaintiff advances only one argument in support of this first prong of the test for permissive joinder: that all of the Does, acting together in a "swarm," used BitTorrent to allegedly download the same work. ROSC at 10-11. But Plaintiff's own evidence refutes this. The Complaint alleges that the various Doe Defendants infringed Plaintiff's work over a period of nearly 50 days during the summer of 2010. Amended Complaint, Ex. A. Plaintiff offers no explanation for how these different alleged infringers could have worked in concert when the alleged infringement occurred during entirely separate time frames. Declaration of Seth Schoen ("Schoen Decl.") at ¶¶ 8-21. In fact, Plaintiff fails to connect any two putative Defendants, alleging only that they committed the same type of violation in the same way. *See generally id*. (explaining BitTorrent protocols and addressing likelihood of relationship between particular Defendants based on use of BitTorrent). As in the above-mentioned case, "the copyright infringement claim against each Defendant is based on the individual acts of each Defendant," not on a common transaction or occurrence. *LFP Internet Group, LLC*, No. 10-2095, at 3-4 (RJN, Ex. F) (finding "that Defendants' alleged use of the BitTorrent software system to commit copyright infringement is, without more, insufficient for permissive joinder under Rule 20").

The same is true even where, as here, a plaintiff alleges infringement of the same copyright work.[4] Order Severing Doe Defs. and Dismissing Claims 4, *Pacific Century Int'l, Ltd. v. Does 1-101*, No. 11-2533 (N.D. Cal. July 8, 2011) ("That BitTorrent users have downloaded the same copyrighted work does not, therefore, evidence that they have acted together to obtain it."). In *Pacific Century*, Magistrate Judge Ryu explained:

> However, Plaintiff glosses over the fact that BitTorrent users may upload different
> initial files of a given work, which results in the creation of distinct swarms. *See* Lin
> Ye et al., *A Measurement Study on BitTorrent System,* 3 Int'l J. Comm, Network & Sys.
> Sci 916, 916 (2000); *see also* Ankur Patel, Comment, *BitTorrent Beware: Legitimizing
> BitTorrent Against Secondary Copyright Liability,* 10 Appalachian J.L. 117, 119

---

[4] Contrary to Plaintiff's assertions otherwise, ROSC at 10, several other courts have severed defendants in mass copyright suits when infringement was alleged of only one work. *See, e.g.*, *West Coast Prods. v. Does 1-2010*, No. 3:10-cv-00093 (N.D.W. Va., Dec. 16, 2010) (RJN, Ex. A); *LFP Internet Group, LLC v. Does 1-3,120*, No. 10-cv-02095 (N.D. Tex. Feb. 10, 2011) (RJN, Ex. F).

BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION
CASE NO. 10-cv-4472 BZ

(2011). . . . [For example], a second initial "seeder" may not enjoy television shows in low definition and instead decide to upload a high definition file of the same episode for distribution.  Notably, because of the differences between the first, low definition file and the second, high definition file, the participants in the first swarm would not interact with those in the second swarm.

*Id*. (internal citations omitted).

In sum, Plaintiff has not satisfied the first prong of the standard for joinder under Rule 20.

### C.  Plaintiff Has Not Shown a Question of Law or Fact in Common to All Defendants.

Rule 20's second requirement is that a case will present a "question of law or fact common to all defendants . . . ." Fed. R. Civ. P. 20(a)(2)(B).  The "mere fact that all [of a plaintiff's] claims arise under the same general law does not necessarily establish a common question of law or fact." *Coughlin*, 130 F.3d at 1351.  "Claims 'involving different legal issues, standards, and procedures' do not involve common factual or legal questions."  *Washington v. Sandoval*, No. 10-0250, 2011 U.S. Dist. LEXIS 43377, at *4 (N.D. Cal. Apr. 19, 2011) (quoting *Coughlin*, 130 F.3d at 1351).

Plaintiff's allegations do not meet Rule 20's standard.  According to Plaintiff, each "Defendant has acted in cooperation with the other Defendants by agreeing to provide, and actually providing, on a P2P network an infringing reproduction of at least some substantial portion of Plaintiff's copyrighted Motion Picture, in anticipation of the other Defendants doing likewise with respect to that work and/or other works." Amended Complaint ¶ 11.  Whatever Plaintiff means here—given that there is no evidence or allegation that Defendants actually communicated personally with each other, it is difficult to imagine what "cooperation" and "agreeing" mean in this context—there is no question that a wide range of factual circumstances and legal defenses will necessarily arise out of a pool of more than 5,000 defendants.

Further, "IP subscribers are not necessarily copyright infringers."  *VPR Internationale v. Does 1-1017*, No. 11-2068, at 2 (C.D. Ill. Apr. 29, 2011) (RJN, Ex. D).  Thus, Plaintiff will need to show that each individual defendant actually infringed its work.  Each of those individuals will have unique factual circumstances, and therefore may have unique legal defenses.  As one court noted:

Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works.  John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their

6

artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

*BMG Music*, 2004 WL 953888, at \*1; *see also LFP Internet Group LLC*, No. 10-2095, at 4 (RJN, Ex. F) (finding joinder improper in mass copyright case "because each Defendant will also likely have a different defense").

This Court should reject Plaintiff's empty statement that this case presents common factual and legal issues.

### D. **Mass Joinder Will Unfairly Prejudice Defendants.**

Even if a plaintiff meets the requirements for permissive joinder under Rule 20(a), courts have broad discretion to refuse joinder or to sever a case in order "to protect a party against embarrassment, delay, expense, or other prejudice . . . ." Fed. R. Civ. P. 20(b); *see also Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir. 2000) (explaining that permissive joinder must "comport with the principles of fundamental fairness").

The Court should exercise that discretion and sever the Doe Defendants.  Of course, joining thousands of unrelated defendants in one lawsuit will make litigation less expensive.  Plaintiff may avoid the separate filing fees required for individual cases and enable its counsel to avoid travel.  But cost-efficiency does not justify ignoring well-established joinder principles.[5]  Moreover, it is not even clear that joinder would lead to judicial economies.  *See* Mem. Op. Denying Mot. for Expedited Disc. 11, *Nu Image, Inc. v. Does 1-23,322,* No. 1:11-cv-00301 (D.D.C. July 29, 2011), DN 11 (It "makes more sense for Plaintiff to bring its case against those John Does in the court where they have a good faith belief . . . the case can actually be prosecuted, . . . [otherwise,] the third-party discovery . . . would take several years to complete.  This delay would be prejudicial to the defendants residing in the District of Columbia, and it presents multiple case management problems for the Court.").  Here, joinder raises serious questions of individual fairness and individual justice, not to mention procedural

---

[5] Other courts considering joinder in mass copyright infringement cases have favored individual fairness over efficiency.  *See, e.g.*, General Order, *UMG Recordings, Inc. v. Does 1-51*, No. 04-0704 (W.D. Tex. Nov. 17, 2004) (RJN, Ex. B) (ordering severance of 254 defendants in four cases, noting that "filing fees for the recent four cases totaled $600, whereas the filing fees for 254 separate cases would have been $38,100").

1
2
headaches for the court that will not result in judicial economy. The Court should sever the
Defendants and drop Does 2-5,011 from the case. *See* Fed. R. Civ. P. 21.

3
4
## II.   THE CASES SHOULD ALSO BE DISMISSED FOR LACK OF JURISDICTION AND IMPROPER VENUE

5
6
7
8
9
10
11
12
13
14
15
16
17
Even if it could justify mass joinder, Plaintiff has not established that this Court has personal
jurisdiction over the vast majority of the Defendants. As a fundamental matter of fairness, no
defendant should be forced to have his rights and obligations determined in a jurisdiction with which
he has had no contact. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).
Accordingly, a plaintiff bears the burden of pleading facts sufficient to support the Court's exercise of
personal jurisdiction over all putative defendants. Based on the facts alleged in its own complaint,
Plaintiff cannot meet that burden. By the same token, Plaintiff cannot show that venue is proper. *See
Columbia Pictures Television v. Krypton Broad.*, 106 F.3d 284, 288 (9th Cir. 1997), *overruled on
other grounds by Feltner v. Columbia Pictures Television*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d
438 (1998) ("Venue under 28 U.S.C. § 1400(a) is proper in any judicial district in which the defendant
would be amenable to personal jurisdiction if the district were a separate state."); *see also Goldberg v.
Cameron*, 482 F. Supp. 2d 1136 (N.D. Cal. 2007).

18
19
### A.   Plaintiff Has Not Made a *Prima Facie* Showing that the Court Has General Jurisdiction Over the Defendants.

20
21
This Court may exercise jurisdiction over the Doe Defendants if it has either general or specific
jurisdiction. Here, it has neither. The Ninth Circuit's test for general jurisdiction is:

22
23
24
> For general jurisdiction to exist over a nonresident defendant . . . , the defendant must
> engage in "continuous and systematic general business contacts" that "approximate
> physical presence" in the forum state. This is an exacting standard, as it should be,
> because a finding of general jurisdiction permits a defendant to be haled into court in the
> forum state to answer for any of its activities anywhere in the world.

25
26
27
*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal citations
omitted).

28
Because Plaintiff does not yet know the identities of Doe Defendants, it does not—and could

8

not—argue that each has "substantial, continuous, and systematic" contacts with California.  As such, Plaintiff cannot make a *prima facie* showing of general jurisdiction.  *See Goldberg*, 482 F. Supp. 2d at 1144 (no *prima facie* showing of general jurisdiction where Plaintiff laced evidence that Defendant engaged in "continuous and systematic general business contacts" in this district).

Moreover, Plaintiff has plainly failed to make a *prima facie* showing to support domicile as a basis for jurisdiction.  The only jurisdictional facts alleged by Plaintiff are (1) IP addresses identifying allegedly infringing computers, and (2) dates of allegedly infringing activities.  Amended Complaint, Ex. A.  These facts actually provide *prima facie* evidence that the vast majority of Doe Defendants are domiciled *outside* of California.  Plaintiff itself is aware of this problem: it concedes that only one in seven of the Doe Defendants is located in California.  ROSC at 5.  Yet this number is not so remarkable when one considers that one in eight Americans is a Californian.[6]  In other words, Plaintiff essentially did little more than take a cross-section of the nation's population and claim then that this makes the entire group of 5,011 Doe Defendants amendable to jurisdiction in California.  Moreover, Plaintiff has made no effort to separate the IP addresses indicating domicile in California from those indicating domicile elsewhere.  As such, this Court must find that it lacks personal jurisdiction based on defendant's domicile.[7]

**B.    Plaintiff Has Not Made a *Prima Facie* Showing that the Court Has Specific Jurisdiction Over the Defendants.**

In order for a court to exercise personal jurisdiction over a non-consenting, non-resident defendant, *i.e.*, find specific jurisdiction, the Due Process Clause[8] requires a plaintiff to demonstrate that: (1) the non-resident "has 'minimum contacts' with the forum" and (2) requiring the defendant to defend its interests in that forum "does not offend traditional notions of fair play and substantial

---

[6] Available at http://www.census.gov/compendia/statab/2011/tables/11s1155.pdf.

[7] If Plaintiff is able to determine that one in seven Defendants is in California, one is left to wonder why those 14 percent do not make up the entire set of Defendants here.

[8] A court's exercise of personal jurisdiction over non-consenting, non-resident defendants must additionally be authorized by statute.  The California long-arm statute reaches as far as the Due Process Clause will permit.  *See* Cal. Civ. Proc. Code § 410.10; *Applied Underwriters, Inc. v. Combined Mgmt.*, 371 Fed. Appx. 834, 835 (9th Cir. 2010) ("California's long-arm statute is coextensive with federal due process . . . .").

9

justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985).  The Ninth Circuit has articulated a three-prong test for minimum contacts:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Pebble Beach*, 453 F.3d at 1155 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).  "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

The Ninth Circuit has refined the first prong of its minimum contacts test, requiring a plaintiff to show that a defendant has "(1) purposely availed himself of the privilege of conducting activities in California, . . . or (2) that he purposefully directed its activities toward [California]."  *Pebble Beach*, 453 F.3d at 1155 ("Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum.  Evidence of direction generally consists of action taking place outside the forum that is directed at the forum.").  That is, a defendant's action must be "expressly aimed at the forum state."  *Id.*  A "bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough."  *Chirila v. Conforte*, 47 Fed. Appx. 838, 843 (9th Cir. 2002) (quoting *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992)).

To the extent that Plaintiff claims personal jurisdiction based on the cross-border accessibility of information on the Internet, courts have long rejected such theories of effective universal jurisdiction.  As the Fourth Circuit explained in *ALS Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002):

> The argument could . . . be made that the Internet's electronic signals are surrogates for the person and that Internet users conceptually enter a State to the extent that they send their electronic signals into the State, establishing those minimum contacts sufficient to subject the sending person to personal jurisdiction in the State where the signals are received. . . . But if that broad interpretation of minimum contacts were adopted, State jurisdiction over persons would be universal, and notions of limited State sovereignty and personal jurisdiction would be eviscerated.

---

10

*Id.* at 712-13 (citations omitted).  Accordingly, the Fourth Circuit limited the exercise of personal jurisdiction based on Internet usage to situations where the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."  *Id.* at 714.  Under this standard, "a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received."  *Id.*; *see also, Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) (the "defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum"). [9]

Plaintiff clearly fails these tests.  As discussed above, the only jurisdictional facts identified (*i.e.*, the IP addresses it associates with each Defendant) fail to establish the alleged copyright infringement occurred in this state, particularly as to the evidently non-resident Defendants.  Plaintiff does not allege that Defendants directed their conduct to this forum, or that they even knew Plaintiff was located here.

Likewise, Plaintiff cannot show that its copyright infringement claim arises out of the Defendants' allegedly forum-related activities.  This prong asks whether a plaintiff would have been injured "but for" the defendant's conduct directed at the forum.  *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).  Plaintiff's own allegations demonstrate its injury did not occur "but for" any Defendant's conduct—even assuming, *arguendo*, that each Defendant's conduct was directed toward California.  Participants in a BitTorrent "swarm" may come and go as they please, and the data transfer continues regardless of any particular Defendant's participation.  *See* ROSC at 11, *citing* Nicolini Decl. ¶ 6 ("[a]s time goes on, the size of the swarm varies"); ROSC at 12 ("the swarm . . . may endure for a much longer period of time than the period" during which Defendants are alleged to have participated).  Indeed, the only possible putative Defendant whose activity could fairly be

---

[9] In Amicus's experience, among the defendants often swept into mass copyright infringement suits such as this one are individuals who did not themselves download the copyrighted work in question, but simply made the mistake of maintaining an unsecured wireless network that allowed neighbors to obtain Internet access.  Whether or not such individuals can be sued for copyright infringement, at the very least those individuals did not knowingly direct tortious activity at California.

BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION
CASE NO. 10-cv-4472 BZ

considered a "but for" cause of the alleged infringement is the original seeder. Plaintiff has not identified this Defendant; thus, it cannot satisfy the "arising out of" prong.

Finally, requiring individuals from across the country to secure counsel far from home, where they are unlikely to have contacts, creates exactly the sort of hardship and unfairness that personal jurisdiction requirements exist to prevent. Here, the hardship is very clear. When the underlying claim is a single count of copyright infringement, the cost of securing counsel just to defend a defendant's identity is likely more than the cost of settlement and possibly even more than the cost of judgment if the defendant lost in the litigation entirely. Consequently, exercising jurisdiction here would not comport with the notions of fair play and substantial justice. *See, e.g., Young v. Actions Semiconductor Co., Ltd.*, 386 Fed. Appx. 623, 628-39 (9th Cir. 2010) (considering "the burden on the defendant of defending in the forum" before finding exercise of jurisdiction "unreasonable"); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002) ("in this circuit, the plaintiff's convenience is not of paramount importance").

**C.** **Plaintiff Has Not Made a *Prima Facie* Showing that Venue Properly Exists in this Court.**

Plaintiff alleges venue is proper in this district under either 28 U.S.C. § 1391(b) and/or 28 U.S.C. § 1400(a). Amended Complaint ¶ 2. Section 1400(a)—the exclusive venue statute for copyright infringement claims[10]—requires that a suit be brought in a judicial district "in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). The Ninth Circuit has interpreted the statute to mean that venue is proper where a court has personal jurisdiction over Defendants. *See, e.g, Columbia Pictures*, 106 F.3d at 288. As set forth above, such jurisdiction is lacking here.

---

[11] Plaintiff relies heavily on an opinion issued by Judge Beryl Howell in different D.C. federal court case, ROSC at 12-14, *citing Voltage Pictures LLC v. Does 1-5,000*, No. 10-0873-BAH (D.D.C. May 12, 2011) and *Call of the Wild Movie, LLC v. Does 1-1,062*, No. 10-cv-0445 (D.D.C. Mar. 22, 2011). As the *Nu Image* decision shows, Judge Howell's views are not universally held, even within her own district.

Additional guidance may be found in a recent opinion District Court in the District of Columbia, *Nu Image v. Does 1-23,322*, *supra* p. 8.[11]  In that case, as here, the plaintiff sued thousands of Does based on their alleged use of BitTorrent to infringe a single work.  After initially permitting early discovery to uncover the identity of those defendants, the court ordered the plaintiff show cause as to why venue and joinder were proper.  Applying the District of Columbia's long-arm statute, the court concluded venue and jurisdiction were improper.  It then effectively withdrew its discovery order, though it said it would consider allowing subpoenas to be issued "for IP addresses that Plaintiff has a good faith basis to believe are reasonably likely to correspond to internet accounts located in the District of Columbia." *Id*. at 12.

In its Order, the court noted that letting a case proceed with the knowledge that the court may not exercise jurisdiction over the vast majority of the defendants is harmful not just to those defendants, but to the court as well:

> [T]he Court must take into account the delay and unproductive utilization of court resources in prosecuting this lawsuit if the Plaintiff is allowed to seek discovery with respect to all 23,322 putative defendants, only to result in the eventual dismissal of the vast majority of those John Does later when it is revealed that they are not [California] residents.

*Nu Image*, *supra* p. 8, at 10.  That same potential harm exists in this case.

Plaintiff has not met its burden to establish this Court's jurisdiction over the Defendants.  Accordingly, Amicus urges the Court to dismiss the suit against all Defendants.

### III.    The Right to Engage in Anonymous Speech is Protected by the First Amendment

"[The] decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995).  This fundamental right enjoys the same protections whether the context for speech and association is an anonymous political leaflet, an Internet message board or a video-sharing site. *See Reno v. ACLU*, 521

---

[11] Plaintiff relies heavily on an opinion issued by Judge Beryl Howell in different D.C. federal court case, ROSC at 12-14, *citing Voltage Pictures LLC v. Does 1-5,000*, No. 10-0873-BAH (D.D.C. May 12, 2011) and *Call of the Wild Movie, LLC v. Does 1-1,062*, No. 10-cv-0445 (D.D.C. Mar. 22, 2011). As the *Nu Image* decision shows, Judge Howell's views are not universally held, even within her own district.

U.S. 844, 870 (1997) (there is "no basis for qualifying the level of First Amendment scrutiny that should be applied" to the Internet); *see also, e.g.*, *Doe v. 2themart.com, Inc.*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001) (the Internet promotes the "free exchange of ideas" because people can easily engage in such exchanges anonymously).

First Amendment protection extends to the anonymous publication of expressive works on the Internet, even if the publication is alleged to infringe copyrights. *See Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) ("[T]he use of P2P file copying networks to download, distribute or make sound recordings available qualifies as speech entitled to First Amendment protection."); *see also, e.g.*, *Interscope Records v. Does 1-14*, 558 F. Supp. 2d 1176, 1178 (D. Kan. 2008); *UMG Recordings, Inc. v. Does 1-4*, No. 06-0652, 2006 WL 1343597, at *2 (N.D. Cal. Mar. 6, 2006); *In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C. 2003), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003).

Because the First Amendment protects anonymous speech and association, courts must "be vigilant . . . [and] guard against undue hindrances to . . . the exchange of ideas." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 192 (1999). Efforts to use the power of the courts to pierce anonymity are subject to a qualified privilege which a court must consider before authorizing discovery.[12] *See, e.g.*, *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure.").

Courts evaluating attempts to unmask anonymous speakers have adopted standards that balance one person's right to speak anonymously with a litigant's legitimate need to pursue a claim. In reaching this balance, courts have relied on the foundational case of *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. App. 2001). Under *Dendrite*, a plaintiff must:

   1)   make reasonable efforts to notify the accused Internet user of the pendency of the identification proceeding and explain how to present a defense;

---

[12] A court order, even if granted to a private party, is state action and hence subject to constitutional limitations. *See, e.g.*, *New York Times v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948).

2)      set forth the exact actions of each Doe defendant that constitute actionable cause;

3)      allege all elements of the cause of action and introduce *prima facie* evidence for each Doe defendant sufficient to survive a motion for summary judgment; and

4)      "balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."

*Dendrite*, 775 A.2d at 760-61.   The *Dendrite* test accurately and cogently protects the First Amendment interests of the Defendants and should be applied here to the extent any of the Doe Defendants remain anonymous or Plaintiff attempts to add (and unmask) any additional Doe Defendants.

## CONCLUSION

Plaintiff has the right to seek legal redress for alleged copyright infringement, but it must follow the due process requirements applicable to all civil litigation.   Amicus therefore suggests the Court dismiss the action and require Plaintiff to re-file individual cases against individual Defendants in courts that can properly exercise jurisdiction.   Amicus also respectfully urges this Court to sever the Defendants.   Alternatively, should this case move forward, the Court should deny discovery of the identities of any additional Defendants unless Plaintiff can meet the required First Amendment standard.

Dated:  August 15, 2011                        Respectfully submitted,

By  /s/  Corynne McSherry
        Corynne McSherry
        corynne@eff.org
        ELECTRONIC FRONTIER FOUNDATION
        454 Shotwell Street
        San Francisco, CA 94110
        T: (415) 436-9333
        F: (415) 436-9993
        www.eff.org

        Attorneys for Amicus Curiae
        the Electronic Frontier Foundation

BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION
CASE NO. 10-cv-4472 BZ