UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ON THE CHEAP, LLC, a California Corporation,<br><br>                Plaintiff(s),<br><br>        v.<br><br>DOES 1-5011,<br><br>                Defendant(s). | No. C10-4472 BZ<br><br>**ORDER SEVERING DOE DEFENDANTS 1-16 AND 18-5011** |

Plaintiff's complaint, filed on October 4, 2010 and amended on January 25, 2011, alleges that Doe defendants 1-5011 are liable for copyright infringement because they used BitTorrent software to illegally download or distribute the same adult film, entitled "Danielle Staub Raw." Docket Nos. 1 and 7.[1] On January 25, 2011, plaintiff moved for an order granting expedited discovery to allow it to serve subpoenas on defendants' internet service providers (ISPs) so it could

---

[1]    Plaintiff has reached a settlement with about 70 Doe defendants and dismissed them with prejudice from this action. See Docket Nos. 13, 14, 44 and 45.

1  learn the identity of each Doe and serve the summons and

2  complaint.  Docket No. 6.  On February 3, 2011, I granted

3  plaintiff's motion.  Docket No. 10.  In the ensuing months,

4  multiple defendants filed motions to quash those subpoenas,

5  raising issues such as innocence, lack of personal

6  jurisdiction, improper joinder, and improper venue.  A check

7  of the Court's docket disclosed that no defendant had appeared

8  and no proof of service had been filed.  At the same time, I

9  became aware of an outbreak of similar litigation in this

10 District and around the country, and of the concerns raised by

11 some of the judges presiding over these cases.  I therefore

12 ordered plaintiff to show cause why this matter should not be

13 dismissed for misjoinder and improper venue and scheduled a

14 hearing for August 24.  Docket No. 37.  Having reviewed

15 plaintiff's response to the order to show cause as well as an

16 amicus brief filed by the Electronic Frontier Foundation, and

17 having considered the arguments of counsel, I find that the

18 almost 5000 remaining Doe defendants are improperly joined for

19 the reasons explained below.[2]

20       FRCP 20(a)(2) allows a plaintiff to join multiple

21 defendants in one action if:

22       (A) any right to relief is asserted against them
          jointly, severally, or in the alternative with
23       respect to or arising out of the same transaction,

24 _____

25       [2]    Plaintiff has consented to this Court's jurisdiction
   for all proceedings, including entry of final judgment under 28
   U.S.C. § 636(c).  Docket No. 5.  No defendant has been served.
26 See Ornelas v. De Frantz, 2000 WL 973684 at *2 (N.D. Cal. June
   29, 2000)("The court does not require the consent of defendants
27 in order to dismiss this action because defendants have not
   been served, and, as a result, are not parties under the
28 meaning of 28 U.S.C. § 636(c)").

occurrence, or series of transactions or
occurrences; and
(B) any question of law or fact common to all
defendants will arise in the action.

Even if these conditions are met, joinder is not mandatory and
the Court may order separate trials to protect any party
against embarrassment, delay, expense, or other prejudice.
FRCP 20(b).  The Court is permitted to sever improperly joined
parties at any time, as long as the severance is on just terms
and the entire action is not dismissed outright.  FRCP 21.  A
decision to sever may be made on the Court's own motion or on
a party's motion.  Id.

Many courts, including several from this District, have
already addressed how the joinder rules apply to lawsuits
against Doe defendants who are alleged to have acted in
concert by using BitTorrent or other similar peer-to-peer
(P2P) software to infringe copyright laws.  Most recent
decisions on this issue have concluded that the use of the
BitTorrent protocol does not distinguish these cases from
earlier rulings in P2P cases in which courts found that
joining multiple Doe defendants was improper since downloading
the same file did not mean that each of the defendants were
engaged in the same transaction or occurrence.  See, e.g., IO
Group, Inc. v. Does 1-435, Case No. 10-4382-SI (N.D. Cal. Feb.
3, 2011); Diabolic Video Productions, Inc. v. Does 1-2099,
Case No. 10-5865-PSG (N.D. Cal. May 31, 2011); Pacific Century
Int'l, Ltd. v. Does 1-101, Case No. 11-2533-DMR (N.D. Cal.
July 8, 2011); Boy Racer v. Does 2-52, Case No. 11-2834-LHK
(PSG) (N.D. Cal. Aug. 5, 2011); MCGIP, LLC v. Does 1-149, Case

1  No. 11-2331-LB (N.D. Cal. Aug. 15, 2011); <u>Hard Drive</u>

2  <u>Productions, Inc. v. Does 1-188</u>, Case No. 11-1566-JCS (N.D.

3  Cal. Aug. 23, 2011).[3]  I agree with the views expressed by

4  these courts and find that plaintiff has not established that

5  joinder would be proper under FRCP 20(a)(2) merely because

6  defendants used BitTorrent to download the same film.[4]

7       Even if plaintiff had satisfied FRCP 20(a)(2)'s

8  conditions for joinder, I would still sever the Doe defendants

9  based on my discretionary authority under FRCP 20(b) and FRCP

10  21.  <u>See</u> <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1296 (9th

11  Cir. 2000); <u>Wynn v. Nat'l Broad. Co., Inc.</u>, 234 F.Supp.2d

12  1067, 1078 (C.D. Cal. 2002)("A determination on the question

13  of joinder of parties lies within the discretion of the

14  district court")(citations and quotations omitted).  Since

15

16  [3]    Other courts have ruled to the contrary in permitting
    plaintiffs to conduct early discovery to identify the Doe
    defendants and deferring the question of joinder and severance
17  until after the Doe defendants are named and served.  <u>See,</u>
    <u>e.g.</u>, <u>Voltage Pictures, LLC v. Does 1-5000</u>, 2011 WL 1807438 at
18  (D.D.C. May 12, 2011); <u>Call of the Wild Movie, LLC v. Does 1-</u>
    <u>1062</u>, 2011 WL 996786 (D.D.C. March 22, 2011); <u>MCGIP, LLC v.</u>
19  <u>Does 1-18</u>, Case No. 11-1495-EMC (N.D. Cal. June 2, 2011); <u>First</u>
    <u>Time Videos, LLC v. Does 1-500</u>, Case No. 10-6254-RC (N.D. Ill.
20  Aug. 9, 2011); <u>Millennium TGA, Inc. v. Does 1-21</u>, Case No. 11-
    2258-SC (N.D. Cal. July 22, 2011).
21

22  [4]    <u>Boy Racer</u>'s analysis is particularly helpful.  Case
    No. 11-2834-LHK (PSG) at *4-5.  In <u>Boy Racer</u>, the Court was not
23  persuaded by the copyright holder's argument, which plaintiff
    sets forth here, that all of the defendants were involved in
    the same transaction because each one of them joined the same
24  "swarm" to download or distribute the copyrighted movie and
    were therefore acting in concert.  <u>Id.</u>  <u>Boy Racer</u> found that
25  the large gap of time — six weeks — between the alleged
    infringing act of the first Doe and the last Doe showed that
26  the defendants may not have been cooperating with each other.
    <u>Id.</u>  The same is true for this case since Doe 1's infringing
27  act allegedly happened on June 19, 2010 while Doe 5011's
    infringing act took place almost seven weeks later on August 6.
28  <u>See</u> Docket No. 7, Ex. A.

4

1   joinder is permissive in character, there is "no requirement
2   that the parties must be joined," particularly where joinder
3   would "confuse and complicate the issues for all parties
4   involved" rather than make the resolution of the case more
5   efficient.  Wynn, 234 F.Supp.2d at 1078, 1088 (citing Wright,
6   Miller & Kane, Federal Practice and Procedure, § 1652).   In
7   its joinder analysis, the Court is required to "examine
8   whether permissive joinder would comport with the principles
9   of fundamental fairness or would result in prejudice to either
10  side."  Coleman, 232 F.3d at 1296 (citations and internal
11  quotations omitted).

12      Here, the joinder of about 5000 defendants will not
13  promote judicial efficiency and will create significant case
14  manageability issues.  For instance, many of the Doe
15  defendants will likely raise different factual and legal
16  defenses.[5]  This is apparent from the motions to quash that
17  were filed.  Compare Docket No. 23 (Doe 406 is a Virginia
18  resident who claims to have never used BitTorrent), with
19  Docket No. 19 (Doe T was an Oregon resident until he died in
20  March 2010, according to his daughter).  If I allow this
21  matter to proceed with about 5000 defendants, it will create a
22  logistical nightmare with hundreds if not thousands of
23  defendants filing different motions, including dispositive
24  motions, each raising unique factual and legal issues that

---

26  [5]      The presence of different factual and legal defenses
    also cuts against plaintiff's argument under FRCP 20(a)(2)(B),
27  which permits joinder only when "any question of law or fact
    common to all defendants will arise in the action."  Obviously
    plaintiff did not believe there was sufficient commonality to
28  allege a FRCP 23 defendant class.

1   will have to be analyzed one at a time.  See, e.g., Hard Drive
2   Productions, Case No. 11-1566-JCS at *19; Boy Racer, Case No.
3   11-2834-LHK (PSG) at *5.  Because the large number of
4   defendants with individual issues will create "scores of mini-
5   trials involving different evidence and testimony" and
6   complicate the issues for all those involved, it is more
7   efficient to proceed with separate cases where there will be
8   separate proceedings, including separate motion hearings and
9   ADR efforts.  Hard Drive Productions, Case No. 11-1566-JCS at
10  *19; see also IO Group, Inc., Case No. 10-4382-SI at *7
11  (noting that one factor weighing in favor of severance is that
12  "since the claims against the different Defendants most likely
13  will involve separate issues of fact and separate witnesses,
14  different evidence, and different legal theories and defenses,
15  which could lead to jury confusion, separate trials will be
16  required for each Defendant")(quoting Fonovisa, Inc. v. Does
17  1-9, 2008 WL 919701 at *6 (W.D. Pa. Apr. 3, 2008)).

18      There are also case manageability problems.  This Court
19  has already struggled with the logistical issues associated
20  with keeping the identities of the moving Doe defendants
21  sealed so that their privacy rights are protected.  Such
22  procedural hurdles will only become more problematic as this
23  case moves forward.  See, e.g., Hard Drive Productions, Case
24  No. 11-1566-JCS at *19 (the Court and the defendants would
25  have to serve each party with each filing, "a significant
26  burden when, as here, many of the defendants will be appearing
27  pro se and may not be e-filers").  During argument, plaintiff
28  could not explain how a FRCP 26(f) pretrial conference or a

1   FRCP 16(b) case management conference would take place with
2   5000 defendants.  No courtroom in this building can hold over
3   200 people, let alone 5000.  Nor did plaintiff explain how
4   discovery or trial will proceed with so many different
5   parties.  See id. (finding that 188 defendants will make
6   discovery "unmanageable" and courtroom proceedings
7   "unworkable").  At the hearing, plaintiff argued that these
8   issues could be resolved by appointing a committee of lawyers
9   to represent the defendants.  Plaintiff did not provide any
10  authority for this proposition or explain how this committee
11  would be chosen or paid.

12      Additionally, I find that joinder would be inappropriate
13  for this case because it would violate the "principles of
14  fundamental fairness" and be prejudicial to the defendants.
15  Coleman, 232 F.3d at 1296; see also Hard Drive Productions,
16  Case No. 11-1566-JCS at *19.  Plaintiff is located in Southern
17  California.  The majority of Doe defendants are located
18  outside of Northern California.  See Schoen Declaration at ¶
19  41 (4232 out of 5011 defendants in this case are likely
20  located outside California); Nicolini Declaration at ¶ 23
21  (plaintiff's supporting declaration concedes that only 1 out
22  of 7 defendants were likely using a California IP address when
23  the alleged infringing behavior occurred and only 1 out of 5
24  of these California IP addresses were likely from the Northern
25  District of California).  I reviewed the first hundred Does
26  listed in the Schoen Declaration and only one appears to be a
27  resident of this District.  Most of the Californians appear to
28  be residents of the Central District where plaintiff is

located.  Plaintiff, well aware of the difficulties out-of-state and out-of-district defendants would face if required to appear in San Francisco, has nonetheless sent them settlement demands which apparently inform them that they have been sued in this District.  The defendants are left with a decision to either accept plaintiff's demand or incur significant expense to defend themselves in San Francisco or hire an attorney to do so.  This does not comport with the "principles of fundamental fairness," and, along with the other prejudices highlighted earlier, compels me to exercise my discretion to sever each defendant but one.[6]

During argument, plaintiff admitted that it was not aware of any court which had permitted the joinder of 5000 defendants.  Plaintiff's response to many of the concerns I expressed was to ask for more time to serve defendants and to decide how it wants to proceed.  Plaintiff sought to justify this delay on the grounds that it had not yet learned the identity of every Doe.  However, plaintiff never explained why it had not served the Does whose identity it knew months ago

---

[6]     The Court's concerns are heightened by plaintiff's refusal to file under seal a copy of its settlement letter and related information about its settlement practices.  The film sells for $19.95 on plaintiff's website.  According to public reports, plaintiffs in other BitTorrent cases, rather than prosecuting their lawsuits after learning the identities of Does, are demanding thousands of dollars from each Doe defendant in settlement.  If all this is correct, it raises questions of whether this film was produced for commercial purposes or for purposes of generating litigation and settlements.  Put another way, Article 1, section 8 of the Constitution authorizes Congress to enact copyright laws "to promote the Progress of Science and useful Arts."  If all the concerns about these mass Doe lawsuits are true, it appears that the copyright laws are being used as part of a massive collection scheme and not to promote useful arts.

8

1   or why those Does should have to endure the uncertainty
2   created by the possibility that they may have to defend this
3   lawsuit in San Francisco during the additional months it takes
4   for plaintiff to identify all 5000 defendants.

5       Plaintiff also never addressed how the litigation
6   strategy it adopted is fair to any defendant.  Knowing that
7   most defendants were not from this District, plaintiff
8   nonetheless asserted that venue was proper and omitted from
9   the complaint any allegation that would support personal
10  jurisdiction over any defendant.  At the hearing, plaintiff
11  suggested two approaches to personal jurisdiction, neither of
12  which I find tenable.  First, plaintiff asserted that it had
13  alleged a prima facie case of jurisdiction, sufficient to
14  allow it to take jurisdictional discovery against the
15  thousands of defendants who are not California residents.
16  Since there are no jurisdictional allegations in the
17  complaint, it is hard to see how plaintiff has made out a
18  prima facie case and permitting it to take jurisdictional
19  discovery from thousands of defendants whom it has no reason
20  to believe have any connection with California would violate
21  "principles of fundamental fairness."[7]

22      Plaintiff also asserted that by virtue of their

---

26      [7]   Without ruling on the issues of jurisdiction and
venue, I note that they have troubled other courts.  See, e.g.,
27  CP Prods., Inc. v. Does 1-300, 2011 WL 737761 (N.D. Ill. Feb.
24, 2011); Nu Image, Inc. v. Does 1-23322, 2011 WL 3240562
28  (D.D.C. July 29, 2011).

9

1  "swarming" activity,[8] the out-of-state defendants have engaged

2  in concerted activity with the California defendants.  The

3  problem with this theory is that since plaintiff could have

4  filed this lawsuit in any state, the logical extension would

5  be that everybody who used P2P software such as BitTorrent

6  would subject themselves to jurisdiction in every state.  This

7  is a far cry from the requirement that "there some act by

8  which the defendant purposefully avails itself of the

9  privilege of conducting activities within the forum State,"

10  which is the hallmark of specific jurisdiction.  See, e.g.,

11  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475

12  (1985)(quotations and citations omitted); Schwarzenegger v.

13  Ford Martin Motor Co., 374 F.3d 797, 801-802 (9th Cir. 2004).

14      Even though plaintiff justified the need for expedited

15  discovery so it could identify and serve Doe defendants

16  (Docket No. 6), eleven months after the complaint was filed,

17  not a single Doe has been served.  Had that happened, the

18  Court undoubtedly by now would have resolved some of the

19  jurisdictional and venue issues this case presents in a

20  concrete, adversarial fashion.  Based on those rulings, some

21  of the management problems discussed above might have been

22  ameliorated.  Instead, plaintiff appears to have used the

23  information from the subpoena for a different purpose: to

24  extract settlements from out-of-state defendants by notifying

25  them that they have been sued in California, knowing that it

26

27      [8]    A "swarm" is a group of BitTorrent users involved in
downloading or distributing a particular file.  See Diabolic
Video Productions, Case No. 10-5865-PSG at *2 (defining "swarm"
28  and explaining how the BitTorrent software operates).

1  is highly unlikely that many of them will be amenable to suit
2  in California.
3      One final concern: it does not appear that plaintiff has
4  served any of the defendants within 120 days of learning their
5  identities earlier this year.  Asked at the hearing why the
6  case should not be dismissed for failing to comply with FRCivP
7  4(m), plaintiff orally requested an extension of time to
8  serve, but did not show good cause for its failure.  Its
9  request is **DENIED**.  Courts have dismissed similar copyright
10  infringement lawsuits where plaintiffs did not effect service
11  within 120 days from the filing of the complaint.  See, e.g.,
12  CP Prods., Inc. v. Does 1-300, 2011 WL 737761 at *1 (N.D. Ill.
13  Feb. 24, 2011).
14      This Court does not condone copyright infringement and
15  encourages settlement of genuine disputes.  However,
16  plaintiff's desire to enforce its copyright in what it asserts
17  is a cost-effective manner does not justify perverting the
18  joinder rules to first create the management and logistical
19  problems discussed above and then offer to settle with Doe
20  defendants so that they can avoid digging themselves out of
21  the morass plaintiff is creating.  See IO Group, Case No. 10-
22  4382-SI at *9 ("Plaintiff's motive for seeking joinder,
23  therefore, is to keep its own litigation costs down in hopes
24  that defendants will accept a low initial settlement demand.
25  However, filing one mass action in order to identify hundreds
26  of Doe defendants through pre-service discovery and facilitate
27  mass settlement, is not what the joinder rules were
28  established for.")

1   Were plaintiff truly desirous of enforcing its copyright
2   in fair fashion, it has options available.  For example, had
3   it filed a lawsuit in each of the four districts in
4   California, at a cost of three additional filing fees, it
5   would have eliminated many of the venue and jurisdictional
6   problems discussed above and could have properly asserted to
7   many Doe defendants that they were being sued in a district in
8   which jurisdiction and venue would lie.  Whether that would
9   have mitigated the other joinder and management issues
10  discussed earlier is less clear.[9]

11      For the foregoing reasons, **IT IS HEREBY ORDERED** that the
12  Doe defendants are improperly joined.  **IT IS FURTHER ORDERED**
13  as follows:

14      1.  All defendants except for Doe 17 are hereby **SEVERED**
15  from this action and dismissed without prejudice.[10]

16      2.  By **September 20, 2011**, plaintiff shall notify, by
17  first-class mail, every Doe defendant for whom it has or
18  obtains an address, that all defendants except Doe 17 have
19  been severed and dismissed from this action.  The notice shall
20  include a copy of this Order.  By **September 23, 2011**,
21  plaintiff's counsel shall file a declaration attesting that
22  plaintiff has complied with this provision, and attaching a
23  copy of the notice plaintiff has sent to the Does.

---

25      [9]    Plaintiff remains free to pursue its copyright
    infringement claims against each individual Doe defendant.

27      [10]   Doe 17 remains as the lone defendant rather than Doe
    1 because Doe 17 is the first defendant on plaintiff's list of
    IP addresses who appears to reside in the Northern District of
28  California.  See Schoen Declaration.

1        3.   Plaintiff shall have until **October 7, 2011** to amend

2    its complaint and serve Doe 17, if it wishes to proceed with

3    its claims against this defendant.  The case management

4    conference, currently set for September 26, 2011, is continued

5    to **December 13, 2011** at **4:00 p.m.** in **Courtroom C**, 15th Floor,

6    Federal Building, 450 Golden Gate Avenue, San Francisco,

7    California 94102.

8    Dated: September 6, 2011

9    _____

10                 Bernard Zimmerman
             United States Magistrate Judge

11   G:\BZALL\-BZCASES\ON THE CHEAP V. DOES\ORDER AFTER OSC HEARING 3.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28